UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-18 LEONARD "DAD" MOORE,

    Defendant.
                                       /

Case No. 06-20465

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE [2866]**

Now before the Court is Defendant-Petitioner Leonard "Dad" Moore's[1] motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. 2819.) Defendant contends that he is entitled to relief because he received ineffective assistance of counsel from two of his attorneys: John Brusstar, who represented him during pretrial, trial, sentencing, and direct appeal; and Paul Croushore, who represented him during his appeal of resentencing proceedings. Defendant also seeks to join certain arguments raised in the 28 U.S.C. § 2255 motion filed by his co-defendant, Gary Ball including: (1) the Government allegedly failed to disclose that Aref Nagi, a co-defendant at trial, was a government informant and cooperating witness; (2) alleged witness tampering by Officer Benito Mendoza; (3) alleged presentation of false testimony before the grand jury and during the trial; and (4) alleged prosecutorial misconduct resulting in the trial of unsupported conspiracy to murder charges. (Dkt. 2821, at 2-4.) After reviewing the briefing of the

---

[1] Leonard "Dad" Moore is the father of another defendant indicted in the same underlying criminal matter, Leonard "Bo" Moore.

parties, the Court finds that an evidentiary hearing is not needed. For the reasons stated below, Defendant's motion is DENIED.

**I.    Background**

Following an almost two-month-long trial, a jury convicted Defendant of Conspiracy to Commit Racketeering. (Dkt. 1470.) Defendant then filed a motion under Federal Rule of Criminal Procedure 29 for a judgment of acquittal, which the Court denied. (Dkt. 1584.) On February 16, 2011, the Court sentenced Defendant to life in prison. (Dkt. 1814.)

On September 30, 2013, on direct appeal, the Sixth Circuit affirmed Defendant's conviction for RICO conspiracy, but remanded the matter for resentencing because Defendant's life sentence was beyond the statutory maximum allowable sentence of 20 years. *United States v. Nagi*, 541 F.App'x 556, 576-77 (6th Cir. 2013). In the *Nagi* opinion, the Sixth Circuit addressed the sufficiency of the evidence against Defendant, the issues of alleged variance and burden shifting, the alleged prosecutorial misconduct, and issues raised concerning the Defendant's sentence. *Id.*, at 566-69; 573-75.

At resentencing, the Court sentenced Defendant to the statutory maximum term of 20 years. (Second Amended Judg., Dkt. 2574.) Defendant again appealed, and the Sixth Circuit affirmed the new sentence. (Dkt. 2676.) On December 7, 2015, the Supreme Court denied Defendant's petition for a writ of certiorari and his sentence became final. (Dkt. 2756.)

Now Defendant moves for relief pursuant to 28 U.S.C. § 2255 asserting ineffective assistance of counsel as the primary basis for relief. (Dkt. 2819.) Defendant also joins certain arguments raised in the § 2255 motion filed by his co-defendant, Gary Ball. (Dkt.

2

2821.) The Government responded to Defendant's motion. (Dkt. 2866.)  Defendant's attorney filed a reply (Dkt. 2869) and Defendant filed a separate *pro se* reply (Dkt. 2873).

## II. Applicable Standard

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  To prevail on the motion, Defendant must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

"It is well-established that a § 2255 motion 'is not a substitute for direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations omitted).  "[C]laims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime."  *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  And "it is equally well settled that a § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law."  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

## III. Analysis

### A. Ineffective Assistance of Counsel

The Sixth Amendment provides, in pertinent part, "in all criminal prosecutions, the accused shall enjoy the right. . . .to have the assistance of counsel for his defense." U.S. Const. Amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To succeed on his ineffective assistance of counsel claim, Defendant must show that his counsel's performance was both deficient and prejudicial to his defense. *Id.* To demonstrate deficient performance, Defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Phrased differently, Defendant must demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The standard is "highly deferential, and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Mallett*, 334 F.3d at 497 (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, Defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The inquiry requires eliminating "the distorting effects of hindsight ... [in order] to evaluate the conduct from counsel's perspective at the time." *Kelly v. Lazaroff*, 846 F.3d 819, 829–30 (6th Cir. 2017) (quoting *Strickland*, 466 U.S.

at 689). The goal is not to ensure that a criminal defendant be afforded perfect counsel, but rather "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Kelly*, 846 F.3d at 830 (quoting *Strickland*, 466 U.S. at 687). The fundamental question is whether the proceeding was "fundamentally unfair or unreliable; a court should not focus the analysis on the outcome." *Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir. 2002).

### 1. Pretrial Ineffective Assistance Claims

Defendant claims trial counsel (1) failed to interview potential defense witnesses, (2) failed to consult with Defendant to review and discuss discovery, and (3) did not prepare him for trial or consider information available for counsel to conduct further investigations.

The Sixth Circuit "has been quite rigorous in demanding more than omission of a hypothetical or 'potential' defense to establish adverse effect." *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004). It requires proof "that the choice was not part of a legitimate strategy, judged under the deferential review of counsel's performance prescribed in *Strickland*." *Id.*

Here, Defendant claims his counsel failed to contact other potential witnesses, Kenneth Smith and Phillip Painter, who were longstanding members of the HMC. Defendant asserts these witnesses would have provided testimony contradicting the government's theory and the testimony of several government witnesses concerning the Defendant's substantial decision making authority over other elected club officers, and his role as the "Godfather" within the HMC. These potential witnesses, who offer affidavits in support of Defendant's motion, claim they were prepared to testify that there was no

5

"godfather" position, but rather only respect for Defendant "because of the number of years [Defendant] had been a member of the club." (Dkt. 2819, at 55.)

These witnesses, however, are HMC members, knew Defendant approximately 40 years each, and had close ties to Defendant. A jury would have had to weigh these facts in assessing their credibility. Furthermore, the government would have had the opportunity cross-examine these witnesses and to ask why Defendant was so well respected "within a club that was as violent and law-breaking as the Highwaymen." (Govt. Resp., Dkt. 2866, at 12; PgID 20849.) The government would have been able to cross examine these potential witnesses about the particulars, or what they knew about the particulars, of the petitioner's prior conviction for interstate travel in aid of racketeering in 1988 as a member of the Highwaymen; their own observations about the drug dealing or violence committed by club members; and their own respective criminal histories." (*Id.*)

These were not neutral witnesses, but long-time associates of Defendant. It is likely that the Government's cross-examination could have hurt Defendant rather than helped. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Harrington v. Richter*, 562 U.S. 86, 108 (2011). Given the possible reasoning for keeping these witnesses from testifying, Defendant has not overcome the highly deferential standard applied to counsel's conduct, nor the strong presumption that counsel provided reasonable professional assistance. *Mallett*, 334 F.3d at 497.

In addition, Defendant claims his counsel did not discuss the sentencing consequences of convictions on the various counts. Defendant specifically states he could

not make an intelligent decision on whether to consider the offered plea bargain or risk proceeding to trial. He also claims his counsel, in advance of trial, failed to provide substantive information about the details of his case, about the strength of the government's evidence, or how best to contest the Government's case. These are self-serving assertions. Defendant, nonetheless, admits his counsel "met with [Defendant] and his wife, Joy Moore on several occasions prior to trial." (D. § 2255 Mot., Dkt. 2819, at 15; PgID 20545.)

When evaluating a claim under *Strickland*, the Court may begin with the prejudice prong when it is dispositive. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004) ("We do not need to address the question of competence, however: '[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . .that course should be followed." (quoting *Strickland*, 466 U.S. at 697)). Defendant identifies no actions he would have taken differently. Defendant does not suggest he might have chosen to take a plea. Instead, he reargues that the Government's case against him was weak and unsupported by the evidence. He reargues that the prosecution misapplied the "godfather" title to him. His continued belief that the government's case lacks merit suggests even now, after having seen all the evidence against him, Defendant would still have risked proceeding to trial. The Court rejects Defendant's ineffectiveness claim for his failure to argue a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Defendant additionally fails to demonstrate deficient performance by counsel. Defendant admits he met with counsel often. He has not "shown

7

that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

### 2. Trial Ineffective Assistance Claims

Defendant recognizes that his counsel attempted to sever his trial from that of his co-defendants in order to prevent spillover. Here, Defendant argues that when the attempt failed, it was "incumbent upon trial counsel to do something to separate his client from those who were alleged to have actually committed the serious substantive crimes." (D. §2255 Mot., Dkt. 2819, at 24; PgID 20554.) Defendant also claims his counsel should have "humanized" him and failed to do so.

Defendant's claim is without merit. Defendant's counsel confronted these exact issues several times from the beginning of trial. In counsel's opening statement he stated the "Government has talked about a lot of the Highwaymen not having legitimate jobs, doing these crimes, selling all of this cocaine. Not Leonard Moore." (Trial Tr. Vol. 3 at 61-63.) He additionally stated "[w]ho calls him Godfather? No one ever called him the Godfather." (*Id.*) "Leonard Moore has been married for 42 years to Joy. . . .has a family; two daughters, one son. . . .worked for the last 19 years at New Center Stamping, he's held a salary job there as a foreman." *(Id.)* His counsel also offers an affidavit stating "my trial strategy was to attempt to minimize Leonard's involvement and leadership within the Highwaymen." (Govt. Resp., Dkt. 2866, Ex. 2, Affidavit at ¶ 4.)

Defendant also criticizes counsel's cross-examinations. Defendant asserts his counsel engaged in minimal cross-examination of witnesses and failed to clarify that Defendant did not act as a "godfather" and was unconnected to the crimes of others.

According to Defendant, his counsel's strategy was "to defer completely to codefendant's counsel to carry the load of cross-examination of the government witnesses." (D. § 2255 Mot., Dkt. 2819, at 27; PgID 20557.) Defendant additionally criticizes those cross-examination questions his counsel did ask, his preparedness, and his execution. (*Id.* at 28; PgID 20558.)

Again, Defendant's contention is not supported by the record. Counsel did conduct several cross-examinations clarifying that incidents involving Defendant were not in fact criminal. He also repeatedly sought clarifications in cross-examinations that Defendant was not the leader as the Government alleged. (Trial Tr. Vol. 9 at 75-76; Vol. 14 at 6-12; Vol. 16 at 13-17; and Vol. 17 at 62-65.) The decision to coordinate efforts among the co-defendants' counsel, so as not to repeat each other during cross-examination, was a valid and practical strategy. Despite Defendant's claims, Defense counsel's actions during cross-examinations, where and when to intervene, or else coordinating with the other defense counsel, falls within the area of trial tactics and strategy. Defendant fails to establish that his counsel's actions or omissions were outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. From the record, Defendant's attorney was consistent and persistent in his representation of Defendant.

Additionally, Defendant again argues that his counsel should have called as witnesses, during the trial, the older HMC members, Kenneth Smith and Phillip Painter. The Court rejected this argument when addressing Defendant's pre-trial allegations. They were insufficient there and remain so here.

9

### 3. Ineffective Assistance Claims Due to Failure to Prepare

Defendant asserts his counsel failed to request funds to obtain a necessary handwriting expert in order to properly dispute Exhibit 214F, which Defendant describes as "the most, if not only, incriminating piece of documentary evidence introduced against him at trial." (D. § 2255 Mot., Dkt. 2819, at 36; PgID 20566.) Defendant's claim fails for lack of prejudice.

With or without the handwriting specialist, the Government found Exhibit 214F in Defendant's home. The handwriting on the document was secondary. "The fact that [Defendant] had the paperwork now, regardless of who made the notations, was the circumstantial evidence demonstrating that the enterprise existed and its nature." (Govt. Resp., Dkt. 2866, at 16, PgID 20853.) During the trial, Defendant's counsel worked to explain to the jury an alternate reason the document may have been in Defendant's home. Since this was an appropriate focus of the counsel's attention Defendant's argument fails. Moreover, the failure to provide expert testimony about the handwriting on a document found in Defendant's home is not prejudicial. There remained significant connection between the document and Defendant.

### 4. Ineffective Assistance Claim for Failure to Challenge Advisory Guidelines Calculations or to Request a Downward Variance at Sentencing.

Defendant asserts that his counsel was ineffective for failing to object to the following during sentencing: (1) only generally challenging the Guidelines scoring to "every predicate count that is counted in the RICO conspiracy" (Tr. Sentencing, PgID 12674), (2) never specifically asking for a downward variance from the life in prison guidelines range, and (3)

failure to make specific arguments against inclusion of groups 2, 5, 6, 7, 8, and 9 in the scoring.

Defendant however fails to establish these instances fall below the standard of objective reasonableness, where counsel did submit a sentencing memorandum on Defendant's behalf. Defendant also fails to establish prejudice since the Court applied the proper legal standard in scoring the relevant conduct. Had Defendant's counsel made these specific objections, in addition to his many others, they would have failed. In the absence of some indication that his argument would have succeeded, Defendant's argument fails. *Strickland*, 466 U.S. at 694.

**5. Ineffective Assistance Claims Related to Appellate Counsel's Failure to Communicate and Failure to Raise Viable Sentencing Issues**

Defendant claims that he received ineffective assistance of counsel on both his direct appeal and his resentencing appeal. Defendant's claims are without merit.

Defendant asserts that he received ineffective assistance of counsel from his appellate counsel on direct appeal because: (1) counsel did not raise specific issues concerning the Court's calculation of the sentencing guidelines on appeal; and (2) counsel failed to challenge "the lack of a specific finding of fact on the racketeering acts characterized as relevant conduct." (D. § 2255 Mot., Dkt. 2819, at 42; PgID 20572.) Neither of these arguments is supported by the record. Defendant's counsel did challenge the Court's calculation of the guidelines on direct appeal. (*See, e.g.*, Govt. Resp., Dkt. 2866, Ex 1, Defendant's Appellate Brief.) And the Court did make specific findings of fact on the record concerning the racketeering acts and conduct forming the basis for the

11

sentence.  (*See, e.g.*, Tr. Sentencing, Dkt 1970, 6-8, 12-15).  Defendant fails to demonstrate that his appellate counsel's conduct on direct appeal falls below the objective standard of reasonableness or that he was prejudiced by such conduct.

With respect to his re-sentencing appeal, Defendant contends that his second appellate counsel was ineffective because he failed to challenge the reasonableness of Defendant's sentence.  As an initial matter, and as both parties acknowledge, Defendant's sentence is within the guideline range and therefore carries the presumption of reasonableness.  *United States v. Epps*, 598 F. App'x 435 (6th Cir. 2015); *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir.2008) (en banc).  Furthermore, the record demonstrates that the Court did conduct the "individualized, specific, fact finding" that Defendant contends is necessary to support the sentence. (Tr. Re-sentencing, Dkt. 2624, 9-11.)  The record also reflects that the Court did consider the mitigating factors the Defendant now argues should have been considered in determining his sentence. (*Id.*)  Defendant was not prejudiced by his appellate's counsel failure to raise an issue on appeal that was not supported by the record and had no merit.

Finally, Defendant argues that his appellate counsel was ineffective because both lawyers did not sufficiently communicate with Defendant about his appeals.  Defendant's allegations concerning these communication issues and the record before the Court do not reflect conduct that falls below the objective standard of reasonableness imposed by *Strickland*. Moreover, Defendant fails to demonstrate that he was prejudiced by the allegedly insufficient communication provided by his counsel in connection with pursuing his appeals. *Strickland*, 466 U.S. at 687.

**B. Joinder In Issues and Claims Alleged by Co-Defednant**

In addition to Defendant's own § 2255 motion (Dkt. 2819), Defendant also filed a Notice of Joinder in Issues and Claims Alleged by Co-Defendant Gary Ball Jr. ("Ball") in Ball's 28 U.S.C. § 2255 Motion (Dkt.2821). Defendant seeks to join only certain arguments raised in Ball's 28 U.S.C. § 2255 motion including: (1) the Government allegedly failed to disclose that Aref Nagi, a co-defendant at trial, was a government informant and cooperating witness; (2) non-disclosure of Brady material; (3) alleged witness tampering by Officer Benito Mendoza; (4) alleged present of false testimony before the grand jury and during the trial; (5) alleged prosecutorial misconduct resulting in the trial of unsupported conspiracy to murder charges; and (6) failure to present all the charged crimes to the grand jury. (Dkt. 2821, at 2-4.) Defendant offers only minimal explanation beyond the description of the issues provided by Ball.

**1. Aref Nagi's Alleged Work as a "Spy in the Camp"**

Defendant joins Ball's argument that he was unconstitutionally confined because co-defendant Aref Nagi may have acted as a "spy in the camp" during the pretrial and trial phases of the case. (Dkt. 2713, at 48.) As this Court noted in its order on Ball's motion for discovery, this argument appears to contemplate two potential legal theories. First, the co-defendants may be arguing that the Government's failure to disclose Nagi's alleged role as an informant entitles them to relief under *Brady v. Maryland*, 373 U.S. 83 (1963). "Under *Brady*, [the defendant] must show that the Government failed to share evidence favorable to the accused, and that the suppression of evidence prejudiced the defendant." *Thomas*

*v. United States,* 849 F.3d 669, 680 (6th Cir. 2017) (citing *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011)).

Alternatively, the co-defendants may be arguing that the Government violated their Sixth Amendment right to a fair adversarial criminal process. *See United States v. Cronic*, 466 U.S. 648, 656 (1984). "[I]n order to establish a violation of the Sixth Amendment right to counsel ensuing from government surveillance, a claimant must not only show that conversations with an attorney were surreptitiously monitored, but must also show that the information gained was used to prejudice the claimant's defense in his criminal trial." *United States v. Collins*, 799 F.3d 554, 591 (6th Cir. 2015) (quoting *Sinclair v. Schriber*, 916 F.2d 1109, 1112 (6th Cir. 1990)).

As embodied in the Government's responses to Ball's discovery requests, the record before the Court forecloses both theories. First, "there are no records of Nagi being signed up as a federal source of information or used in a federal prosecution," and neither the FBI nor the DEA has a record of Nagi working as a "cooperating witness, source of information, or informant for the federal government." (Dkt. 2886 at ¶ 31.) Further, "[n]either Nagi nor his counsel attempted to cooperate with the U.S. Attorney's Office or Federal Bureau of Investigation in connection with or immediately prior to or during the pendency of the underlying criminal matter." (*Id.* at ¶ 32.) Finally, "[t]here was no cooperation agreement between Nagi and any Assistant United States Attorney in the underlying criminal matter," and a search of multiple databases returned "no record of a cooperation agreement between Nagi and the U.S. Attorney's Office -- Eastern District [of Michigan] . . . for any time period." (*Id.* at ¶ 34.)

14

Given the overwhelming evidence that Nagi did not work as a "spy in the camp," the Court concludes that Defendant, in relying on Ball's claims, has failed to show that the Government violated his Sixth Amendment right based on government surveillance. Neither Ball, nor Defendant, have shown that their conversations were surreptitiously monitored, let alone that any information gained was used to prejudice their defenses during trial. *Collins*, 799 F.3d at 591. For similar reasons, this Court concludes that Defendant has not demonstrated that he is entitled to relief under *Brady*. Defendant, and Ball before him, have not shown that the Government failed to share evidence favorable to him, let alone that the suppression of such evidence caused prejudice. *Thomas v. United States*, 849 F.3d at 680.

### 2. Non-disclosure of *Brady* Materials

Defendant without support, joins Ball's non-disclosure of *Brady* materials argument. Defendant asserts, separate from his Aref Nagi complaint, that he and his co-defendants were denied fundamental fairness in the proceedings because prosecutors withheld unnamed exculpatory and impeachment material as well as used unnamed evidence and/or failed to correct evidence the government knew or should have known was false. (Dkt. 2821, at 2; PgID 20592.) Near the end of his brief, Ball similarly baldly asserted that the Government "failed to provide [Ball] with discovery to which he was entitled, including, but not limited to, *Brady*, *Giglio*, and other material, including material concerning the investigation in the case, to which he constitutionally was entitled and was entitled under Rule 16 of the Federal Rules of Criminal Procedure." (Dkt. 2713, at 47.) For relief under *Brady*, Defendant "must show that the Government failed to share evidence favorable to

the accused, and that the suppression of evidence prejudiced the defendant." *Thomas*, 849 F.3d at 680. As was the case for Ball also, Defendant's bald assertion does not make the requisite showing.

### 3. Witness Tampering

Defendant joins Ball's argument that "[t]he government engaged in misconduct where [Detroit Police Officer Benito Mendoza] has been identified as a corrupt law enforcement officer who is believed to have discussed witnesses' testimony with them while transporting them, getting them to color testimony to protect some people on whose behalf he was working or in whose interest he was acting." (Dkt. 2821, at 3; PgID 20593.) Ball's motion states that Ball "believes that [Detroit Police Officer Benito Mendoza] was discussing witnesses' testimony with them while transporting them, getting them to color testimony to protect some people on whose behalf he was working or in whose interests he was acting, while getting them to implicate others who he did not know or did not wish to favor." (Dkt. 2713, at 42.) However neither Ball nor Defendant substantiated their beliefs with any evidence of witness tampering. Defendant is not entitled to relief on this ground.

### 4. Improper Remarks to Grand Jury

Defendant seeks to join Ball's arguments that the prosecutors encouraged false grand jury and trial testimony. Ball argued that various remarks by the prosecution denied him due process. For this claim to succeed, Defendant and Ball had to demonstrate that the prosecution's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Bryan v. Bobby*, 843 F.3d 1099, 1113 (6th Cir. 2016) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In the Sixth Circuit, courts apply

a two-step approach for determining if prosecutorial remarks violated a defendant's due process rights. *Gumm v. Mitchell*, 775 F.3d 345, 380 (6th Cir. 2014) (citing *Christini v. McKee*, 526 F.3d 888, 899 (6th Cir. 2008)). First, the court must consider whether the prosecution's remarks were improper. *Id.* (citing *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)). Then, if the court concludes that the remarks were improper, it must determine if they were sufficiently flagrant to warrant reversal by looking to four factors: (1) the likelihood that the remarks would mislead the jury or prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally presented to the jury; and (4) whether other evidence against the defendant was substantial. *Id.* (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). In making this assessment, the court must consider the totality of the circumstances. *Id.* (citation omitted); *see also United States v. Beverly,* 369 F.3d 516, 543 (6th Cir. 2004) ("In examining prosecutorial misconduct, it is necessary to view the conduct at issue within the context of the trial as a whole.").

The first set of allegedly improper remarks relate to Doug Burnett's decision to serve as a cooperating witness. Defendant argues, as Ball had previously, that the Agent Brzezinski falsely testified before the grand jury and at trial that "Burnett simply came in and decided to tell the government what he knew." (Dkt. 2713, at 48.) The reality, Defendant and Ball insist, was that "Burnett already was under surveillance by the government for his role in storing kilos of narcotics in his father's house and, indeed, Burnett had contact with the agents who had the house under surveillance." (*Id.*) Neither Defendant nor Ball, cite any evidence supporting these claims. As a result, there is no basis for determining that

17

Agent Brzezinski's remarks were improper. Furthermore, it is unlikely that the remarks either misled the jury or prejudiced the accused because (1) both Defendant and Ball had ample opportunity to cross-examine Burnett about his decision to cooperate at trial; and (2) as discussed above, the evidence against Defendant was overwhelming.

Defendant and Ball also claim that the Government "used information from 302s from another investigation (involving Alexander Aceval) to get the indictment that was returned in this case," even though it knew that the case "had nothing to do with the Highwaymen" and that "the law enforcement officers and prosecutors involved had been corrupt." (Dkt. 2821, at 4; PgID 20594.) Neither Defendant, nor Ball, substantiated this claim regarding the Government's knowledge, so Defendant has failed to show that its conduct was improper, let alone prejudicial.

For the reasons discussed above, the aforementioned remarks do not supply grounds for relief in isolation, and considering them together does not compel a different conclusion. Whether examined alone or collectively, these remarks did not so infect the proceedings "with unfairness as to make the resulting conviction a denial of due process." *Bryan*, 843 F.3d at 1113 (citations omitted).

**5. Murder Conspiracy Charges**

Defendant attempts to join Ball's argument regarding the conspiracy to murder charges. Ball claimed that the Government committed prosecutorial misconduct with regard to Count Thirteen (conspiracy to murder). As this Court stated in its discovery order, the Sixth Circuit already rejected this argument on direct appeal, and it is "well-settled that a § 2255 motion may not be employed to re-litigate an issue that was raised and
18

considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law." *Jones*, 178 F.3d at 796. Given that the Court cannot identify any "highly exceptional circumstances" for reconsidering this issue, Ball was not entitled to relief on this ground and neither is Defendant.

Additionally, even if reconsideration were warranted, the claim would still fail because Defendant was not prejudiced. The jury considered these charges against Defendant and acquitted him. The jury weighed the evidence and credited its own determinations over that of the supposed damage of association with these crimes.

### 6. Failure to Present the Grand Jury with All of the Charged Crimes

Defendant joins Ball's argument that the Government never presented the grand jury with all of the crimes charged in the Second Superseding Indictment. Because this is a claim that should have been raised on direct appeal, it is procedurally barred unless Defendant shows "(1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Ray* , 721 F.3d at 761 (citing *Bousley*, 523 U.S. at 614). Neither Defendant, nor Ball, have made the requisite showing, so the claim will not be entertained

## IV. Certificate of Appealability

The Court may issue a Certificate of Appealability when the § 2255 movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2); *Welch v. United States*, 136 S. Ct. 1257, 1263, 194 L. Ed. 2d 387 (2016). The standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner." *Id.* (quoting *Slack v. MacDaniel*, 529 U.S.

473, 484 (2000)). The Court believes that no reasonable jurist would find that Defendant's claims have merit, so the Court will not issue a certificate of appealability. *See Slack*, 529 U.S. at 483-84.

**V.   Conclusion**

For the foregoing reasons, Defendant's 28 U.S.C. § 2255 motion is DENIED, and the Court DECLINES TO ISSUE a Certificate of Appealability.


SO ORDERED.

> s/ Nancy G. Edmunds
> Nancy G. Edmunds
> United States District Judge

Dated:  September 27, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2018, by electronic and/or ordinary mail.

> s/Lisa Bartlett
> Case Manager